## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michelle Landerer, | ) | |
| Plaintiff, | ) | Civil Case No. |
| v. | ) | |
| Dover Area School District; Dover Area | ) | |
| School District Board of Directors; Nathan | ) | |
| Eifert, individually and in his official | ) | |
| capacity as Chairperson of the Board  of | ) | |
| Directors; Terry Emig, individually and in | ) | |
| his official capacity as Vice-President of the | ) | |
| Board of Directors; Denis Dachaux, | ) | |
| Individually and in his official capacity as | ) | Verified Complaint |
| Treasurer of the Board of Directors; | ) | for Injunctive Relief, |
| Amy Briton, individually and in her official | ) | Declaratory Relief, |
| capacity as a member of the Board of | ) | and Damages |
| Directors; Kathy Herman individually and | ) | |
| in her official capacity as a member of the | ) | |
| Board of Directors; Heidi Mease, | ) | |
| Individually and in her official capacity as a | ) | |
| member of  the Board of Directors; Charles | ) | |
| Rausauer, individually and in his official | ) | |
| capacity as a member of the Board of | ) | |
| Directors; Carmen Witmer, individually and | ) | |
| in her official capacity as a member of the | ) | |
| Board of Directors; David Wolverton, | ) | |
| Individually and in his official capacity as a | ) | |
| member of the Board of Directors; Kelly | ) | |
| Cartwright, individually and in her official | ) | |
| capacity as Superintendent of Dover Area | ) | |
| School District; Tuesday Hufnagel, | ) | |
| Individually and in her official capacity as | ) | |
| Principal of Dover Area Middle School; | ) | |
| Shantal Williams, individually and in her | ) | |
| Official capacity as Regular Education/ | ) | |
| Emotional Support Teacher at Dover Area | ) | JURY TRIAL DEMANDED |
| Middle School | ) | |
| Defendants. | ) | |

## INTRODUCTION

1.     Plaintiff files this action seeking damages for Defendants' violations of her fundamental parental rights to direct the upbringing, physical and mental health decision-making for her children, her fundamental right to familial privacy, and her fundamental right to free exercise of religion under the United States and Pennsylvania constitutions.

2.     Defendants violated and continue to violate Plaintiff's fundamental rights by establishing and implementing an ad hoc policy and/or directive, (hereinafter "Directive"), that deliberately conceals from Plaintiff critical information regarding her daughter's mental health and well-being, *i.e.,* her assertion of a discordant gender identity and request to be affirmed in that identity through the use of alternative names, pronouns and other measures, without the knowledge and consent and even over the objection of Plaintiff.

3.     Defendant Dover Area School District ("District") administration mandates that school staff purposefully and intentionally withhold information from, and mislead and deceive parents by, referring to their child by his or her legal name and biologically-accurate pronouns when communicating with parents, but using the child's expressed assumed name and pronouns at all other times, unless the child has consented to informing his or her parents. In so doing, Defendants have violated and continue to violate Ms. Landerer's fundamental parental rights under the United

States Constitution and free exercise rights under the United States and Pennsylvania constitutions.

4.      Defendants' actions are particularly egregious with regard to Ms. Landerer's daughter, O.G., whom Defendants know is a survivor of childhood trauma and has been diagnosed with Post Traumatic Stress Disorder ("PTSD"), Attention Deficit Disorder ("ADD"), and General Anxiety Disorder ("GAD") for whom affirming a discordant gender identity is antithetical to her health and well-being. Despite this foreknowledge, Defendants purposefully and recklessly disregarded the known risk of harm to O.G. and continue to do so, even stating that District personnel have and will continue to intentionally lie to Plaintiff about referring to O.G. as a boy, using the name "Caleb" and male pronouns.

5.      Plaintiff is asking this Court to remedy the violations of her fundamental rights and the resulting harm to her daughter and possible, if not likely, harm to her son by granting injunctive and declaratory relief and awarding damages, including attorneys' fees and costs, to Plaintiff.

## JURISDICTION AND VENUE

6.      This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiff from deprivation, under color of state law, of rights secured by the Fourteenth Amendment to the United States Constitution, by the laws

of the United States and the laws of Pennsylvania. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a).

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in Pennsylvania. Venue is also proper in this Court because the Defendants reside or have their principal place of business in this District.

8.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57.

9.     An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiff alleges that Defendants' policies, procedures, directives and actions taken in accordance with them, on their face and as applied, violate the United States Constitution and have infringed Plaintiff's rights, while Defendants will erroneously allege that their policies, procedures, directives, and actions comport with the Constitution and required under Title IX of the Educational Amendments Act of 1972, 28 U.S.C. §1681, et seq.

10.     This Court is authorized to grant Plaintiff's prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

## PARTIES

11.     Plaintiff Michelle Landerer is the mother and legal guardian of O.G., who was a student at Dover Area Middle School, and J.G., who is a student at Weigelstown Elementary School, both of which are part of Dover Area School District.

12.     Dover Area School District is a unified school district organized and existing as "a body corporate" under 24 Pa. Stat. §§ 211-223. Defendant Board of Directors is the governing body of the District under 24 Pa. Stat. § 5-507, capable of suing and being sued under 24 Pa. Stat. § 5-515 (hereinafter collectively referred to as the "District").

13.     Defendant Nathan Eifert (hereinafter "Eifert") was, at all relevant times alleged herein, a member and the President of the District Board of Directors. Eifert is sued in his individual and official capacities.

14.     Defendant Terry Emig (hereinafter "Emig") is currently a member, and at all relevant times alleged herein, was the Vice-President of the District Board of Directors. Emig is sued in his individual and official capacities.

15.     Defendant Denis Dachaux (hereinafter "Dachaux") was, at all relevant times alleged herein, a member and the Treasurer of the District Board of Directors. Dachaux is sued in his individual and official capacities.

16.     Defendant Amy Briton (hereinafter "Briton") was at all relevant times alleged herein a member of the District Board of Directors. Briton is sued in her individual and official capacities.

17.     Defendant Kathy Herman (hereinafter "Herman") was at all relevant times alleged herein a member of the District Board of Directors. Herman is sued in her individual and official capacities.

18.     Defendant Heidi Mease (hereinafter "Mease") is currently, and all relevant times alleged herein was, a member of the District Board of Directors. Mease is sued in her individual and official capacities.

19.     Defendant Charles Rausauer (hereinafter "Rausauer") was at all relevant times alleged herein a member of the District Board of Directors. Rausauer is sued in his individual and official capacities.

20.     Defendant Carmen Witmer (hereinafter "Witmer") is currently, and at all relevant times alleged herein was, a member of the District Board of Directors. Witmer is sued in her individual and official capacities.

21.     Defendant David Wolverton (hereinafter "Wolverton") is currently, and at all relevant times alleged herein was, a member of the District Board of Directors. Wolverton is sued in his individual and official capacities.

22.    Defendant Kelly Cartwright (hereinafter "Cartwright") is the Superintendent of the District. Wright is sued in her individual and official capacities.

23.    Defendant Tuesday Hufnagel (hereinafter "Hufnagel") is the Principal of Dover Area Middle School, which is part of the District. Hufnagel is sued in her individual and official capacities.

24.    Defendant Shantel Williams (hereinafter "Williams") is the emotional support teacher at Dover Area Middle School. Williams is sued in her individual and official capacities.

## STATEMENT OF FACTS

25.    Ms. Landerer's daughter, O.G., is 14 years old. She experienced childhood trauma and has been under the care of physicians and mental health professionals since that time.

26.    O.G. was diagnosed with Post Traumatic Stress Disorder ("PTSD"), Conversion Disorder ("CDO"), General Anxiety Disorder ("GAD"), and Attention Deficit Disorder ("ADD"), all of which manifests in the form of diminished emotional regulation. Because of O.G.'s diagnoses she qualified for, and has in place, an Accommodation Plan pursuant Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et. seq. ("Sec. 504") with the District.

27.    O.G. was a student in Dover Area School District from 2016 to May 2023.

28.    In 2022, during her eighth grade year of middle school, O.G. was experiencing significant anxiety and behavior issues.

29.    O.G. was already under the care of a private counselor chosen by her mother who was providing mental health therapy. When O.G. began experiencing increased stress and anxiety, Plaintiff increased the frequency of the therapy sessions.

30.    In August 2022, O.G. told her private counselor that she thought she might be "trans." The counselor and Ms. Landerer began discussing that issue with O.G. and working through her feelings with her.

31.    Defendants fashioning and implementation of the Directive as de facto policy resulted in the deception of and withholding from parents of information necessary for parents to make informed decisions concerning their children's health and welfare.

32.    Defendants made statements in public and private meetings that children's safety requires concealing information from parents because some parents will not affirm the child's wishes.

33.     Unbeknownst to Plaintiff, during the 2021-2022 school year, O.G. told her teachers at Dover Area Middle School that she wanted to be treated as a boy and use the name "Caleb".

34.     Ms. Landerer was not informed or advised by the District regarding O.G.'s request to be treated as a different sex and called by an alternate name, despite O.G. having mental health diagnoses and qualifying disabilities pursuant to Sec 504, all of which the District was fully aware.

35.     During the 2021-2022 school year, Defendant Williams, unbeknownst to and without Plaintiff's consent, regularly met with O.G. for the purpose of affirming O.G.'s request to be treated as a different sex and called by an alternate name and facilitating O.G.'s gender transition.

36.     In August 2022 Ms. Landerer first learned that O.G. had been and was being affirmed as a boy named "Caleb" at school by personnel of the District when her son, J.G., then a student at Dover Area School District, was approached by a teacher/employee of the District and asked, "How is your brother 'Caleb' doing?" J.G. responded by stating that he did not have a brother named Caleb and the teacher informed him that his sister O.G. had requested and was being affirmed by District staff as a boy named "Caleb". J.G. then told his mother, Plaintiff Michelle Landerer, about his conversation with the teacher. Had it not been for J.G.'s conversation with the District teacher, Ms. Landerer might never have learned that her vulnerable

daughter was being secretly and deliberately affirmed as a boy (socially transitioned to a male identity) by District personnel.

37.    Ms. Landerer spoke with O.G. She told her she is too young to make such decisions, that her legal name is "O", that she can legally change her name when she becomes an adult and that she could work through her feelings on the issue in the counseling she was receiving. O.G. said that she felt pressured to continue using the male name and being identified as a boy because that was now how District personnel at school regarded her.

38.    On August 11, 2022, Ms. Landerer sent a text message to Hufnagel at Dover Area Middle School saying: "O. is registered as O.G. and I expect she will be addressed as such.  NOT CALEB… There is NO room for discussion about this matter and have discussed this with [O.G.'s therapist] as well so I am expecting there to be no confusion…" A true and correct copy of Ms. Landerer's text message is attached hereto, marked as Exhibit A and incorporated herein by reference.

39.    On August 22, 2022, Plaintiff met with Hufnagel and other District personnel. During this meeting, District personnel confirmed that during the 2021-2022 school year District staff had in fact affirmed O.G. as a boy, used the name Caleb, and male pronouns when referring to O.G.

40.    Ms. Landerer asked O.G. to tell her teachers to call her "O" instead of "Caleb" and O.G. said she did so. Ms. Landerer later learned that O.G. had told her

10

teachers to call her "O" in Ms. Landerer's presence because her mother wanted it. Hufnagel confirmed that she, Hufnagel, would refer to O.G. as "O" in Ms. Landerer's presence, but as "Caleb" in all other scenarios.

41. Ms. Landerer's son, J.G. is 11 years old and currently is a student at Weigelstown Elementary School and has been a student enrolled in Dover Area School District since 2019.

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiff's Substantive Due Process Fundamental Parental Right to Direct the Upbringing of Her Child under the U.S. Constitution)
### (Against all Defendants)

42. Plaintiff incorporates the preceding factual allegations in paragraphs 1-41 by reference as if set forth in full.

43. At the time of the events described in this Complaint, U.S. Supreme Court and Third Circuit precedent had established that the Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the upbringing, care, custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000); *Gruenke v. Seip,* 223 F. 3d 290, 305 (3rd Cir. 2000); *Miller v. Mitchell,* 598 F. 3d 139, 150 (3rd Cir 2000).

44. Defendants have violated and are continuing to violate Plaintiff's fundamental rights to make important decisions regarding the upbringing, custody,

care, and control of her children in establishing and implementing the Directive that prohibits informing parents regarding their children's assertions of discordant gender identity and attendant requests to be treated as a different sex, *i.e.* socially transition, unless their minor children consent.

45.     Defendants have acted and are continuing to act with reckless disregard for Plaintiff's fundamental parental rights by purposefully and intentionally concealing critical information and decisions regarding the upbringing, care and control of her daughter O.G., *i.e.*, that her daughter was asserting a discordant gender identity, had requested to be treated as the opposite of her biological sex, addressed by an alternate name and pronouns, and other information and decisions associated with affirming the child's gender discordance.

46.     Defendants continue to act with reckless disregard for Plaintiff's fundamental parental rights by continuing to implement the Directive, which expressly requires District personnel to deliberately conceal and withhold from parents of District students, like Plaintiff, critical information regarding the status of their children's mental health and well-being.

47.     Defendants, and each of them, have acted and are acting with reckless disregard for Plaintiff's fundamental parental rights as described *infra*.

**Defendants School Board And Individual Members Are Acting with Reckless Disregard for Plaintiff's Fundamental Parental Rights.**

12

48.     Defendant School Board and the individual members of the Board of Directors know or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Third Circuit, provide that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

49.     Defendants School Board and its individual members have acted and continue to act with reckless disregard for those established fundamental rights by failing to adequately direct, train and/or supervise District administration and staff that parental rights must be respected when addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the forms of being treated as the other sex, including the use of alternate names and pronouns at school.

50.     Defendants School Board and its individual members knowingly and purposely failed to act in keeping with 24 PS § 5-515 and the United States Constitution to protect parental rights by ensuring that parents are informed when a child seeks to socially transition at school and consents before instituting the child's request. Instead of acting to protect parental rights, the Board has sanctioned and permitted District administrators to implement and maintain a standardless, ad hoc policy (the Directive) that prohibits parental notification when children request to socially transition to another gender identity unless the minor child consents.

13

51.    The Board's and Board members' sanctioning of an ad hoc policy (Directive) leaves the issue of whether the fundamental rights of parents to direct the care, custody, and control of their children will be respected through notification of and adherence to parental instructions concerning social transitioning of their children to the unbridled discretion of District administrators and staff.

52.    As a direct result of the Board's and of Board members' acts and failures to act, the fundamental parental rights of Plaintiff have been infringed.

53.    Plaintiff's fundamental parental rights will continue to be infringed so long as the Directive remains in effect, in that Plaintiff will continue to face the threat of having her son who continues to attend Dover Area Schools socially transitioned without her knowledge and consent.

**Defendant Cartwright Is Acting with Reckless Disregard for Plaintiff's Fundamental Parental Rights.**

54.    Defendant Cartwright knows or should know that the U.S. Constitution, as interpreted by the Supreme Court of the United States and Third Circuit, and 24 PS § 10-1001, et sec. provide that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

55.    Defendant Cartwright has acted with reckless disregard for those established fundamental rights by failing to adequately train or supervise District staff that parental rights must be respected when addressing critical issues involving

children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the forms of being treated as the other sex, including the use of alternate names and pronouns at school.

56.    Defendant Cartwright knowingly and purposely failed to request, demand, or otherwise establish and implement District protocols or procedures to protect parental rights in keeping with 24 PS § 10-1001, et sec. and the United States Constitution by requiring parental notification and adherence to parental instructions when a child seeks to socially transition to being treated as a different sex at school. Instead, Cartwright has sanctioned, instructed and authorized District staff to implement the Directive that requires, *inter alia,* that information related to children's requests to socially transition to being treated as a different sex by school officials be concealed from parents unless their minor children consent.

57.    Defendant Cartwright explicitly instructed District staff that they would not inform Plaintiff of critical information related to her daughter's mental health, *i.e.,* her professed discordant gender identity and request to socially transition, despite her knowledge of O.G.'s history of trauma and diagnosis of ADD and PTSD. Cartwright thus exhibited reckless disregard for Plaintiff's fundamental parental rights, as well as O.G. 's mental health and well-being.

58.    The implementation of the Directive sanctioned by Cartwright has infringed and continues to infringe the fundamental parental rights of Plaintiff and

other parents of the District's students to direct the care, custody, and control of their children, including Plaintiff's daughter, O.G., in a manner that has irreparably harmed her. So long as the Directive remains in effect, it continues to infringe on the fundamental rights of Plaintiff as to her son, J.G., who is still enrolled in Dover area Schools. Because the Directive demands secrecy from parents, Plaintiff would likely not know of such infringement until after the fact.

**Defendant Hufnagel Is Acting with Reckless Disregard for Plaintiff's Fundamental Parental Rights.**

59.     Defendant Hufnagel knows or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and Third Circuit explicitly provides that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

60.     Defendant Hufnagel has acted and continues to act with reckless disregard for those established fundamental rights by failing to adequately train or supervise Dover Area Middle School staff that parental rights must be respected when addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the forms of being treated as the other sex including the use of alternate names and pronouns at school.

16

61.     Defendant Hufnagel knowingly and purposely sanctioned and directed Dover Area Middle School staff to implement the Directive that violates the Constitution in that it requires, *inter alia,* that information related to children's requests to socially transition to being treated as a different sex be concealed from parents unless their minor children consent.

62.     Defendant Hufnagel explicitly stated that she would refer to O.G. as "O" in Plaintiff's presence, but has and would continue to refer to O.G. as "Caleb" in all other situations. In doing so, Hufnagel violated Plaintiff's rights to make decisions concerning her daughter's mental health and emotional well-being despite Hufnagel's knowledge of O.G's history of trauma and diagnoses of PTSD, ADD , GAD and  CDO.

63.     The implementation of the Directive by Hufnagel has infringed and continues to infringe the fundamental parental rights of parents of the District's students, like the Plaintiff, to direct the care, custody, and control of their children, like Plaintiff's daughter and son, in a manner that has irreparably harmed O.G. and likely will harm J.G. Because the Directive demands secrecy from parents, Plaintiff would likely not know of such infringement with respect to J.G. until after the fact.

**Defendant Williams Is Acting with Reckless Disregard for Plaintiff's Fundamental Parental Rights.**

64.     Defendant Williams knows or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and Third Circuit, provides

17

that the fundamental right to direct the care, custody, and control of children resides first in the parent and cannot be infringed by state actors absent a compelling state interest.

65.     Defendant Williams acted with reckless disregard for those established fundamental rights by secretly meeting with O.G. and affirming O.G.'s discordant gender identity, thereby failing to honor and respect Plaintiff's parental rights in addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the forms of being treated as the other sex, including the use of alternate names and pronouns at school.

66.     Defendant Williams knowingly and purposefully implemented the Directive that violates the Constitution in that it requires, *inter alia,* that information related to children's requests to socially transition to being treated as a different sex by school officials be concealed from parents unless their minor children consent.

67.     Defendant Williams met with O.G. individually numerous times for the express purpose of affirming O.G.'s discordant gender identity, without informing Plaintiff or obtaining Plaintiff's consent, thereby withholding from and denying Plaintiff of critical information related to her daughter's mental health, *i.e.,* her professed discordant gender identity and request to socially transition despite her knowledge of O.G.'s history of childhood trauma and diagnoses of PTSD, ADD,

18

GAD and CDO. Therefore, Williams has acted with reckless disregard for Plaintiff's fundamental parental rights.

68.    The implementation of the Directive by Williams has infringed and continues to infringe the fundamental parental rights of Plaintiff to direct the care, custody, and control of her daughter in a manner that has irreparably harmed her.

69.    Because the Directive intentionally excludes Plaintiff and other parents from decision-making regarding requests by their children to be treated as the opposite sex by school officials, it cannot be known whether Defendants have similarly acted with reckless disregard for Plaintiff's fundamental rights by secretly meeting with and/or transitioning Plaintiff's son. Consequently, Plaintiff's fundamental rights continue to be threatened so long as the Directive remains in effect.

70.    All Defendants' reckless disregard for Plaintiff's rights has resulted in deprivation of her fundamental constitutional rights in that Defendants are explicitly and intentionally excluding Plaintiff from significant decision-making directly related to her children's care.

71.    Plaintiff's constitutionally protected right to direct the upbringing of her children was and continues to be violated as the plainly obvious consequence of Defendants' actions in: (a) directing District staff that students are entitled to confidentiality with respect to *their own parents* when they raise issues related to a

discordant gender identity; (b) withholding mental health information regarding O.G., from Ms. Landerer; (c) promoting and implementing the social transition of a discordant gender identity for O.G. without her parent's knowledge or consent, and even over Plaintiff's objections; and (d) taking or failing to take other related actions as to O.G. and J.G. of which Plaintiff is presently unaware.

72.     Defendants cannot assert a compelling interest for disregarding Plaintiff's long-established fundamental constitutional right to direct the upbringing, care, and education of their children, and Defendants' prohibition against parental notification and obtaining consent is not narrowly tailored.

73.     Defendants' violation of Plaintiff's fundamental constitutional rights has caused and continues to cause Plaintiff undue hardship and irreparable harm.

74.     Plaintiff has no adequate remedy at law to correct the continuing deprivation of her fundamental rights.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiff's Fundamental Parental Right under Substantive**
**Due Process in the Fourteenth Amendment to Direct the Medical and Mental**
**Health Decision-making for Her Child)**
**(Against all Defendants)**

75.     Plaintiff incorporates the factual allegations in Paragraphs 1- 74 by reference as if set forth in full.

76.     At the time of the events described in this Complaint, Supreme Court precedent and Third Circuit precedent had established that the Due Process Clause

20

in the 14th Amendment to the United States Constitution protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children as part of their fundamental right to direct the upbringing of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000); *Parham v. J. R.*, 442 U.S. 584 (1979); *Gruenke v. Seip,* 223 F. 3d 290, 305 (3rd Cir. 2000); *Miller v. Mitchell,* 598 F. 3d 139, 150 (3rd Cir 2000), 35 P.S. §§ 10101 – 10105.

77.    At the time of the events described in this Complaint, 35 P.S. §§ 10101 – 10105 provided that parents must be informed of and consent to medical/mental health care for their children who are under age 18.

78.    Defendants have knowingly and intentionally violated and are continuing to violate Plaintiff's fundamental right to make decisions regarding mental health care for her children by approving and implementing the Directive that directs staff to encourage, facilitate, develop, and implement gender-affirming social transitioning, which is recognized as a mental health intervention, with children under age 18, including O.G. and J.G., without informing or gaining consent from parents and in the case of O.G., over the explicit objections of her mother.

79.    Defendants particularly acted with reckless disregard for Plaintiff's fundamental rights by failing to inform Plaintiff about O.G.'s mental health issue related to her assertion of a discordant gender identity and request to be treated as

the opposite sex so that she could determine the provision of appropriate treatment and care, particularly in light of O.G.'s pre-existing childhood trauma and mental health issues for which she was under a therapist's care.

80.    Defendants, and each of them, have acted and are acting with reckless disregard for Plaintiff's fundamental right to make medical and mental health care decisions for her children as described *infra*.

**Defendants School Board and Its Individual Members Are Acting With Reckless Disregard for Plaintiff's Right To Direct the Medical and Mental Health Treatment of Her Children**

81.    Defendants School Board and the individual members thereof know or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and the Third Circuit protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children as part of their fundamental right to direct the upbringing of their children and that 35 P.S. §§ 10101 – 10105 provides that parents must be informed of and consent to medical/mental health care for their children who are under 18 years of age.

82.    Defendants School Board and the individual members have acted with reckless disregard for those established fundamental rights by failing to adequately direct, train or supervise District administration and staff that parents must be informed and parental instructions must be honored when District staff are

addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the form of being treated as the other sex by District officials and personnel, including the use of alternate names and pronouns at school.

83.    Defendants School Board and its individual members knowingly and purposely failed to act in keeping with Supreme Court and Third Circuit precedent to protect parental rights to medical and mental health decision-making by ensuring that parents are informed and consent when a child seeks to socially transition at school. Instead of acting to protect fundamental parental rights as established by Supreme Court and Third Circuit precedent, the Board has sanctioned and permitted District administrators to maintain a standardless, *ad hoc* policy (Directive) that infringes parental rights by prohibiting parental notification when children request to socially transition to a gender identity discordant with their biological sex unless the minor child consents to disclosure.

84.    The Board's and its individual members' sanctioning of the Directive leaves the issue of whether the fundamental rights of parents to make medical and mental health decisions for their minor children will be respected concerning the social transitioning of their children to the unbridled discretion of District administrators and staff.

85.    As a direct result of the Board's and its individual members' acts and failures to act, the fundamental parental rights of Plaintiff have been infringed by District staff's deliberate and intentional concealment of their facilitation of the social transitioning of O.G. and refusal to adhere to parental instructions.

### Defendant Cartwright Is Acting with Reckless Disregard for Plaintiff's Right to Direct the Medical and Mental Health Treatment of Her Children

86.    Defendant Cartwright knows or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and the Third Circuit protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children as part of their fundamental right to direct the upbringing of their children and that 35 P.S. §§ 10101 – 10105 provides that parents must be informed of and consent to medical/mental health care for their children who are under 18.

87.    Defendant Cartwright has acted with reckless disregard for those established fundamental rights by failing to adequately train or supervise District staff that parents must be informed and parental instructions must be honored when District staff are addressing critical issues involving children's mental health and emotional well-being, such as a child's assertion of a discordant gender identity and request for social transition in the form of being treated as the other sex by District officials and personnel, including the use of alternate names and pronouns at school.

88.    Defendant Cartwright knowingly and purposely failed to act in keeping with the United States Constitution and 35 P.S. §§ 10101 – 10105 to respect and protect parental rights by requiring parental notification, consent and adherence to parental instructions when a minor child seeks to socially transition at school, a recognized mental health intervention. Instead, Cartwright has sanctioned and permitted District staff to implement the Directive that requires, *inter alia,* that information related to children's mental health in the form of requests to socially transition to the opposite sex/gender be concealed from parents unless their minor children consent.

89.    Defendant Cartwright explicitly informed Plaintiff that District staff would not inform Plaintiff of critical information related to her daughter's mental health, *i.e.,* her professed discordant gender identity and request to socially transition, despite her knowledge of O.G.'s history of sexual trauma and diagnosis of PTSD, ADD, GAD and CDO. Cartwright has thus exhibited reckless disregard for Plaintiff's fundamental parental rights, as well as for O.G.'s mental health and well-being.

90.    Because the Directive intentionally excludes Plaintiff and other parents from decision-making regarding requests by their children to social transition, it cannot be known whether Defendants have similarly acted with reckless disregard for Plaintiff's fundamental rights by secretly meeting with and/or transitioning

Plaintiff's son. Consequently, Plaintiff's fundamental rights continue to be threatened so long as the Directive remains in effect.

91.    The adoption and implementation of the Directive sanctioned by Cartwright has infringed and continues to infringe upon the fundamental parental rights of Plaintiff to make medical and mental health care decisions for her minor children, more specifically in a manner that has irreparably harmed O.G.

**Defendant Wilson Is Acting with Reckless Disregard for Plaintiff's Right To Direct the Medical and Mental Health Treatment of Plaintiff's Children**

92.    Defendant Wilson knows or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and the Third Circuit protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children as part of their fundamental right to direct the upbringing of their children and that 35 P.S. §§ 10101 – 10105 provides that parents must be informed of and consent to medical/mental health care for their children who are under 18 years of age.

93.    Defendant Wilson, in her capacity as O.G.'s Emotional Support teacher, acted with reckless disregard for those established fundamental rights by regularly addressing critical issues involving O.G.'s mental health and emotional well-being by affirming O.G.'s assertion of a discordant gender identity and request for social transition in the form of being treated as the other sex, including the use

of alternate names and pronouns at school - all without the knowledge or consent of Ms. Landerer.

94. Defendant Wilson knowingly and purposefully implemented the District's Directive that violates the Constitution and 35 P.S. §§ 10101 – 10105 in that it requires, *inter alia,* that information related to a minor child's mental health including requests to socially transition to the opposite sex/gender be concealed from parents unless their minor children consent.

95. The implementation of the Directive by Wilson as described has infringed and continues to infringe upon the fundamental parental rights of Plaintiff to make medical and mental health care decisions for her minor child, in a manner that has irreparably harmed O.G.

**Defendant Hufnagel Is Acting with Reckless Disregard for Plaintiff's Fundamental Parental Rights.**

96. Defendant Hufnagel knows or should know that the U.S. Constitution as interpreted by the Supreme Court of the United States and the Third Circuit protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children as part of their fundamental right to direct the upbringing of their children and that 35 P.S. §§ 10101 – 10105 provides that parents must be informed of and consent to medical/mental health care for their children who are under 18.

97.    Defendant Hufnagel has acted with reckless disregard for those established fundamental rights by failing to adequately train or supervise Dover Area Middle School staff that parental rights must be respected when addressing critical issues involving children's mental health and emotional well-being such as a child's assertion of a discordant gender identity and request for social transition in the form of being treated as the other sex, including the use of alternate names and pronouns at school.

98.    Defendant Hufnagel knowingly and purposely sanctioned and directed and/or permitted Dover Area Middle School staff to implement the District's Directive that violates the Constitution and 35 P.S. §§ 10101 – 10105 in that it requires, *inter alia,* that information related to minor children's mental health, including requests to socially transition to an opposite sex/gender, be concealed from parents.

99.    Defendant Hufnagel has explicitly instructed and directed Dover Area Middle School staff not to inform Plaintiff of critical information related to her daughter's mental health, *i.e.,* her professed discordant gender identity, and request to socially transition, despite Hufnagel's knowledge of O.G. 's history of childhood trauma and diagnoses of PTSD, ADD, GAD and CDO. Hufnagel has thus exhibited reckless disregard for Plaintiff's fundamental parental rights, as well as O.G.'s mental health and well-being.

100.   The implementation of the Directive by Hufnagel has infringed and continues to infringe the fundamental parental rights of Plaintiff to make medical and mental health care decisions for her minor child, J.G., and in O.G.'s case in a manner that has irreparably harmed O.G.

101.   All Defendants' reckless disregard for Plaintiff's rights resulted in deprivation of her fundamental constitutional rights. Defendants are explicitly and intentionally excluding Plaintiff from significant decision-making directly related to her children's mental health.

102.   Defendants cannot assert a compelling interest for disregarding Plaintiff's long-established fundamental constitutional right to direct the medical and mental health care for their child and violating 35 P.S. §§ 10101 – 10105 requirement for parental notice and consent for medical or mental health care for children under age 18. Defendants' prohibition against parental notification is not narrowly tailored.

103.   By excluding Plaintiff from discussions regarding her children's mental health issues, including questions regarding affirmation of a discordant gender identity, adopting and implementing the Directive, intended to withhold information from Ms. Landerer and socially transition her daughter O.G. at school, Defendants are making decisions that affect the mental health of her children in contravention of Plaintiff's fundamental rights.

104.  Defendants have usurped Plaintiff's responsibility for the health and well-being of her children and sought to supplant their authority for Plaintiff's authority as a fit parent to be the ultimate decision maker regarding the physical and mental health of her children, including decisions related to her daughter O.G.'s confusion or distress about her sex or gender identity.

105.  Defendants' reckless disregard for Plaintiff's rights resulted in the deprivation of Ms. Landerer's fundamental constitutional rights to direct the medical and mental health decision-making for her children.

106.  Plaintiff's constitutionally protected right to direct the medical and mental health decision-making for her child was violated as the plainly obvious consequence of Defendants' actions in (a) failing to train and supervise District staff regarding parental notification requirements; (b) directing District staff that students are entitled to confidentiality with respect to *their own parents* when they request to be treated as an opposite sex gender identity; (c) withholding mental health information regarding O.G. from Ms. Landerer; (d) promoting and facilitating social transition of a discordant gender identity for O.G. without her parent's knowledge or consent and even over Plaintiff's objections; and (e) taking or failing to take other actions as to O.G. and J.G. of which Plaintiff is presently unaware.

107.  Defendants' violation of Plaintiff's fundamental constitutional rights has caused and continues to cause Plaintiff undue hardship and irreparable harm.

108.   Plaintiff has no adequate remedy at law to correct the continuing deprivation of her fundamental rights.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiff's Right to Free Exercise**
**of Religion Under the U.S. Constitution)**
**(Against All Defendants)**

109.   Plaintiff incorporates the factual allegations of paragraphs 1-108 by reference as if set forth in full.

110.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Ms. Landerer's right to free exercise of religion.

111.   Ms. Landerer has sincerely held religious beliefs that include: 1) human beings are created male or female by God and the natural created order regarding human sexual identity cannot be changed; 2) individuals are to speak the truth, which includes refraining from misrepresenting an individual's natural biological and created sexual identity as either a male or a female; 3) Children are commanded to obey and respect the authority of their parents and show respect to other adult authority figures; 5) Parents have the non-delegable duty to introduce and teach their children about issues related to sexual identity and personal relationships in accordance with biological reality and Biblical truth.

31

112.   Defendants were aware of Ms. Landerer's sincerely held religious beliefs and that treating her daughter as a boy and untruthfully using a male name and pronouns would violate her sincerely held religious beliefs.

113.   Defendants' implementation of the Directive, under which Defendants withheld information from Ms. Landerer regarding O.G.'s assertion of a male identity and the Defendants' treatment of O.G. as a boy with a male name and pronouns prevented Ms. Landerer from acting pursuant to her sincerely held religious beliefs by depriving her of the information she needed to train and counsel O.G. regarding conflicts about her sex and responding in a manner consistent with their family's faith.

114.   Unless and until Defendants suspend, revise, or revoke the Directive under which Defendants will withhold information from parents when their children assert an opposite sex identity and Defendants treat a student as the opposite sex with opposite sex names and pronouns, will deprive parents of District students, such as Ms. Landerer, of information she needs to act pursuant to her sincerely held religious beliefs to train and counsel her son regarding conflicts about his sex and responding in a manner consistent with their family's faith.

115.   Defendants' implementation of the Directive as to O.G. has significantly burdened Ms. Landerer's sincerely held religious beliefs by preventing her from acting pursuant to her religious belief that it is the parents who have the

right and duty to train their children regarding human sexual identity and the unchangeable natural divinely-created order of humans as male and female. Adherence to the Directive means that Defendants affirmed the idea that the reality of male and female are changeable with O.G. and acted according to that ideology. Defendants thereby deprived Ms. Landerer of the ability to use faith-informed principles to instill in her child the concepts of male and female sexuality and to counter undesirable influences presented to O.G. at school.

116.   Defendants' continuing implementation of the Directive significantly burdens Ms. Landerer's sincerely held religious beliefs by preventing her from acting pursuant to their religious belief that it is the parents who have the duty to train her children regarding human sexual identity and the unchangeable naturally created order of humans as male and female. Adherence to the Directive means that Defendants will affirm the idea that the reality of male and female are changeable with Plaintiff's child and will act according to that ideology. Defendants will thereby deprive Ms. Landerer of the ability to use faith-informed principles to instill the concepts of male and female sexuality and to counter undesirable influences presented to her child at school.

117.   Defendants' actions in excluding Ms. Landerer from decision-making regarding her daughter's assertion of a discordant sexual identity because of a perceived lack of "affirmation" targeted Ms. Landerer's religious beliefs regarding

the Biblical created order, biological reality, human nature, sexuality, gender, ethics, and morality which constitute central components of her sincerely held religious beliefs.

118.   Defendants' actions in continuing to implement a Directive that foreseeably risks excluding Ms. Landerer from decision-making regarding her son because of a perceived lack of "affirmation" targets Ms. Landerer's religious beliefs regarding the Biblical created order, biological reality, human nature, sexuality, gender, ethics, and morality which constitute central components of her sincerely held religious beliefs.

119.   The Directive and Defendants' actions pursuant to the Directive are neither neutral nor generally applicable. Defendants' Directive, as articulated in public meetings and conversations, that children's safety requires concealing information from parents because some parents will not affirm the child's wishes, targets Ms. Landerer's sincerely held beliefs that 1) human beings are created male or female by God and the natural created order regarding human sexual identity cannot be changed; 2)  individuals are to speak the truth, which includes refraining from misrepresenting an individual's natural biological and created identity as either a male or a female and speaking the truth regarding matters of sexual identity as a male or female; 3) Children are to obey and respect the authority of their parents and show respect to other adult authority figures.

34

120.   No compelling state interest justifies the burdens Defendants imposed on Ms. Landerer's rights to the free exercise of religion.

121.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

122.   Defendants' violation of Ms. Landerer's rights to free exercise of religion has caused, is causing, and will continue to cause Ms. Landerer to suffer undue and actual hardships.

123.   Defendants' violation of Ms. Landerer's rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiff to suffer irreparable injury. Plaintiff has no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

124.   Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target Ms. Landerer's religious beliefs that require her to refrain from affirming an identification of her child as something other than her God-given biological sex, and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and social transitioning for children.

## FOURTH CAUSE OF ACTION
### Violation of Civil Rights, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Procedural Due Process Rights
### Under the U.S. Constitution)

35

**(By Michelle Landerer Against Defendants School Board and Cartwright)**

125.   Plaintiffs incorporate the allegations of paragraphs 1 through 124 by reference as if set forth in full.

126.   The Due Process Clause of the Fourteenth Amendment protects against government action that impairs constitutional rights without adequate procedural safeguards. Procedural due process forbids the government from depriving Plaintiff of her constitutional rights except through an individualized process. The Due Process Clause requires the government to consider the significance of Plaintiff's private interest, the risk that the government's procedures might erroneously deprive Plaintiff of that interest, the extent to which different procedures might reduce that risk, and the government's reason, if any, for employing alternative methods of protecting Plaintiff's rights. *B.S. v. Somerset Cnty*., 704 F.3d 250 (3d Cir. 2013), citing *Evans v. Sec'y Pa. Dep't of Corr.,* 645 F.3d 650, 658 (3d Cir. 2011).

127.   Defendant District's practice and implementation of its *De Facto* Policy/Directive by design expressly excludes and prohibits any mechanism allowing Mrs. Landerer to receive notice of, let alone participate in, comment on or consent to the District's decisions to meet secretly with O.G, to treat O.G. as a boy using a false male name and pronouns, and taking other actions to promote a false male identity for O.G., all of which interfere with Mrs. Landerer's fundamental constitutional rights. The District's Policy/Directive regarding parental notification

fails to provide for notice to parents and institutes the deceiving of parents concerning their child's request to be treated as the opposite sex, demonstrating that Defendants have failed to consider the significance of Plaintiff's fundamental constitutional rights.

128.   Defendants' actions in implementing the District's *De Facto* Policy/ Directive have deprived Mrs. Lander of her fundamental constitutional rights to 1) direct the upbringing, including making mental health decisions, for their daughter, 2) maintain familial privacy without interference from the state, and 3) freely exercise her sincerely held religious beliefs without providing any notice, let alone the particularized process required under the Fourteenth Amendment.

129.   Alternative actions by Defendants, *e.g.,*1) enacting a parental notification policy whenever a child requests to be treated as something other than their biological sex by school officials and 2) supervising and training District staff that confidentiality laws as well as the Constitution and Pennsylvania parental rights laws require that parents be notified of issues related to their children's health and well-being–including the assertion of a discordant gender identity–regardless of the child's wishes, would diminish if not eliminate the deprivation of Plaintiff's procedural due process rights.

130.   Defendants have not offered a legally sufficient reason for failing to provide such processes or procedures that would ensure the protection of the Plaintiff's procedural due process rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

**Under The First Cause of Action:**

1.   A declaration that Defendants violated Plaintiff's fundamental rights as parent, to direct the care, custody, and control of her child under the United States Constitution through the development and implementation of the Directive and associated ad hoc policies and procedures, to the extent that they: (a) enabled Plaintiff's child to change gender identity at school by, *inter alia,* being treated as the opposing sex including selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's discordant gender identity, including any desired change in treatment, name and pronouns, without first obtaining the children's consent; and (c) instructed, directed, or permitted teachers and other staff to deceive parents by, *inter alia*, using different names and pronouns around parents than are used in school;

2.   A preliminary injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating students as any

38

sex or gender other than their biological sex or referring to a student by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associated with the student's biological sex without the prior written consent of a custodial Parent; (b) Having any private discussions with a student related to mental health issues, including but not limited to a student's assertion of a discordant gender identity and request to social transition, without the prior written consent of the student's custodial parent;

3.      A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating students as any sex or gender other than their biological sex or referring to students  by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associated with the student's biological sex without the prior written consent of the student's custodial parent; (b) Having any private discussions with a student related to mental health issues, including but not limited to a student's assertion of a discordant gender identity and request to social transition, without the prior written consent of the student's custodial parent;

4.      For nominal damages for violation of Plaintiff's constitutional rights;

5.      For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including (a) emotional distress, (b) exacerbation

of O.G.'s psychological and educational difficulties requiring ongoing counseling, education in an alternative setting and other interventions, (c) ongoing emotional and psychological damage to the family dynamic, requiring therapeutic interventions to rebuild trust between parent and child, and other injuries as proven at trial;

**Under The Second Cause of Action:**

1.      A declaration that Defendants violated Plaintiff's fundamental rights as parent, to direct medical and mental health decision-making under the United States Constitution, through the development and implementation of the Directive and associated ad hoc policies and procedures, to the extent that they: (a) enabled Plaintiff's child to change gender identity at school by*, inter alia,* being treated by school officials and personnel as the opposing sex including selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's discordant gender identity, including any desired change in treatment, name and pronouns, without first obtaining the children's consent; and (c) instructed, directed, or permitted teachers and other staff to deceive parents by *inter alia*, using different names and pronouns around parents than are used in school;

2.      A preliminary injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating District students as any sex or gender other than the student's biological sex or referring to students

by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associate with the student's biological sex without the prior written consent of  the student's custodial parent;(b) Having any private discussions with students related to mental health issues, including but not limited to a student's assertion of a discordant gender identity and request to social transition, without the prior written consent of the student's custodial parent;

3.      A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating students as any sex or gender other than that associated with the student's biological sex or referring to a student by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associated with the student's biological sex without the prior written consent of the student's custodial parent; (b) Having any private discussions with a student related to mental health issues, including but not limited to a student's assertion of a discordant gender identity and request to social transition, without the prior written consent of the student's custodial parent;

4.      For nominal damages for violation of Plaintiff's constitutional rights;

5.      For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including (a) emotional distress, (b) exacerbation

41

of O.G.'s psychological and educational difficulties requiring ongoing counseling, education in an alternative setting and other interventions, (c) ongoing emotional and psychological damage to the family dynamic, requiring therapeutic interventions to rebuild trust between parents and child, and other injuries as proven at trial;

**Under The Third Cause of Action:**

1.    A declaration that Defendants violated Plaintiff's fundamental right to free exercise of religion under the United States and Pennsylvania constitutions, through development and implementation of the Directive and associated ad hoc policies and procedures, to the extent that they: (a) enabled Plaintiff's child to change gender identity at school by*, inter alia,* being treated as the opposing sex including selecting a new "affirmed name and pronouns," without parental notification and consent; (b) prohibited teachers and other staff from communicating with parents about their children's discordant gender identity, including any desired change in treatment, name and pronouns, without first obtaining the children's consent; (c) instructed, directed, or permitted teachers and other staff to deceive parents by, *inter alia*, using different names and pronouns around parents than are used in school; (d) endorsed the idea that the reality of male and female are interchangeable with Plaintiff's daughter and acted toward her daughter according to that ideology; (e) directly counteracted Plaintiff's right and effort to instill in her child faith-informed

principles of male and female sexuality (f) refused to accommodate Plaintiff's religious beliefs by referring to O.G. by her given name and female pronouns.

2.     A preliminary injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating students as any sex or gender other than the student's biological sex or referring to a student  by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associated with a student's biological sex without the prior written consent of the student's custodial parent; (b) Having any private discussions with students  related to mental health issues, including but not limited to a child's assertion of a discordant gender identity and request to social transition, without the prior written consent of the student's custodial parent;

3.     A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: (a) Treating students as any sex or gender other than the student's biological sex or referring to students  by any name other than the name recorded in the student's educational records as maintained by the District or by any pronouns other than pronouns associated with the student's biological sex without the prior written consent of the student's custodial parent; (b) Having any private discussions with students related to mental health issues, including but not limited to her assertion of a discordant gender

identity and request to social transition, without the prior written consent of the student's custodial parent;

4.    For nominal damages for violation of Plaintiff's constitutional rights;

5.    For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including (a) emotional distress, (b) exacerbation of O.G.'s psychological and educational difficulties requiring ongoing counseling, education in an alternative setting and other interventions, (c) ongoing emotional and psychological damage to the family dynamic, requiring therapeutic interventions to rebuild trust between parents and child, and other injuries as proven at trial;

**Under the Fourth Cause of Action:**

A.    A declaration that Defendants have violated  Plaintiff's right to procedural due process under the United States Constitution to the extent that they inter alia: a) failed to adopt and implement parental notification policies and procedures; b) failed to supervise and train District staff regarding parental notification requirements; c) directed District staff that students are entitled to confidentiality with respect to their own parents when they raise issues related to gender identity; d) met and provided mental health interventions surreptitiously with O.G. without notifying her parents; f) promoted a false male identity for O.G. without notifying her parents; g) deprived Plaintiff of parental decision-making authority concerning her child's personal care

and control without attendant processes and procedures to safe-guard Plaintiff's constitutionally protected rights.

B.     For nominal damages;

C.     For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including a) emotional distress, b) ongoing emotional and psychological damage to O.G. requiring therapeutic interventions to rebuild the trust between her and her parent which was damaged by the actions of Defendants, c) ongoing emotional and psychological damage to the family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) ongoing damage for loss of educational opportunities, educational costs and other injuries as proven at trial;

D.     For attorneys' fees and costs under 42 U.S.C. § 1988;

E.     For such other relief as the Court deems proper.

**Under All Causes of Action:**

1.     For attorneys' fees and costs under 42 U.S.C. § 1988;

2.     For such other relief as the Court deems proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues.

Dated:  April 3, 2024.


*/s/ Andrea L. Shaw*
Andrea L. Shaw
PA Bar No. 89333
Law Office of Andrew H. Shaw, P.C.
2011 W Trindle Rd,
Carlisle, Pennsylvania 17013
Telephone (717) 243-7135
andrea@ashawlaw.com

Ernest G. Trakas*
MO Bar No. 33813
CHILD & PARENTAL RIGHTS CAMPAIGN
8123 Delmar Blvd., Suite 200
St. Louis, MO  63130
Telephone (770) 448-4525
etrakas@childparentrights.org

Mary E. McAlister*
VA Bar No. 76057
Vernadette R. Broyles*
GA Bar No. 593026
CHILD & PARENTAL RIGHTS CAMPAIGN
5805 State Bridge Road, Suite 310
Johns Creek, GA 30097
Telephone (770) 448-4525
mmcalister@childparentrights.org
vbroyles@childparentrights.org
*\* Pending Admission Pro Hac Vice*
*Counsel for Plaintiff*

## VERIFICATION

I, Michelle Landerer, declare as follows:

I. I am the Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Pennsylvania.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Injunctive Relief; and if called on to testify I would competently testify as to the matters stated herein.

3. I have personal knowledge of the actions of the Board of Education, administrators and employees of the  Dover Area School District, their activities, and their intentions, including those set out in the foregoing Verified Complaint for Injunctive Relief, and if called on to testify I would competently testify as to the matters stated herein.

4. I verify, under penalty of perjury under the laws of the United States of America, that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning the Board of Education, administrators, and employees of the Dover Area School District.

Executed on March 18, 2024

_Michelle Landerer_
Michelle Landerer